FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN ANDERSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SCOTT RUSSELL; BELINDA STEWART; BRAD SIMPSON; JAMES KEY; JOSEPH LUCE; and JOHN or JANE DOES NO. 1,<br><br>　　　　　Defendants. | NO: 2:17-CV-412-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is a motion for summary judgment by Defendants Scott Russell, et al. ECF No. 9. Washington Assistant Attorney General Candie Dibble represents Defendants, and Plaintiff Kevin Anderson represents himself. The Court has reviewed the motion and record, has heard arguments from counsel, and is fully informed.

///

///

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

The Washington State Department of Corrections (the "Department") spends approximately $2.44 for each standard meal served to inmates. ECF No. 11 at 2. At Passover, the Department offers inmates who practice Judaism the option of meals that do not contain fermented grains. These special meals cost approximately $6.25 each. *Id.* at 3.

Chaplains at the Department's correctional institutions work with inmates and Department employees to process inmates' religious diet requests. ECF No. 12 at 1–2. Historically, the Passover meal service was available only to inmates who had specified a Jewish Religious Preference and received a kosher diet. *Id.* at 2. However, in February 2014, the Department separated its process for addressing requests to receive eight days of Passover meal service from its kosher diet list. *Id.* Following the policy change, the number of inmates participating in the Passover meal service jumped from an average of eight to ten inmates to over 200 inmates by 2016, at a cost of over $300,000, without accounting for additional labor costs. *Id.* at 2–3. Consequently, in 2017, the Department issued new criteria to chaplains to restrict participation in the Passover meal service to a smaller, more specific group of inmates. *Id.* at 3. To be eligible to receive the Passover meal service after the policy change, an inmate must submit his request to participate in the meal service by an established deadline and either be a current kosher meal participant or be a non-kosher meal participant "with demonstrated participation in Jewish Messianic,

Christian or religious programming applicable to the Jewish faith over the past twelve months." *Id.* at 3.

Plaintiff Kevin Anderson is serving a sentence imposed by a Washington State Court and is currently incarcerated at Airway Heights Corrections Center ("Airway Heights") in Airway Heights, Washington. ECF No. 12 at 3. Mr. Anderson sought to receive the Passover meals in 2017. A Department chaplain at Airway Heights reviewed Mr. Anderson's records and found that he was not a kosher meal recipient and did not participate in religious programming applicable to the Jewish faith at the correctional facility's Religious Activities Center during the twelve months prior to his Passover meal request. ECF No. 12 at 3. Therefore, the chaplain did not approve Mr. Anderson's meal participation request. *Id.* Mr. Anderson again requested to receive the Passover meal service in 2018. The Airway Heights chaplain again denied Mr. Anderson's request, on the same basis as in 2017. Airway Heights also offered Jewish religious programming for Passover, and throughout the year, which Mr. Anderson was "welcomed and encouraged" to attend, regardless of his ineligibility to receive Passover meal service in the Airway Heights dining hall.

The Airway Heights chaplain further avers that Mr. Anderson "may also sign up to receive a kosher diet or attend Jewish religious services or activities during the year so that he may meet the criteria for Passover Food Service the following year. Nothing prohibits his attendance at any religious services or programs offered in the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

prison chapel." ECF No. 12 at 5. Specific to Passover, inmates may participate in a Seder and other observances and services related to the holiday, regardless of whether they are approved to participate in the Passover meal service. *Id.* at 4.

Mr. Anderson filed a grievance contesting the chaplain's denial of Mr. Anderson's Passover meal service request in 2017. In resolving Mr. Anderson's appeal of the grievance, Department Corrections Program Administrator Scott Russell (a named Defendant in this action) concurred with the chaplain's determination and explained in his written decision:

> The Memo to All Inmates dated December 22, 2016 clearly identified the requirements for participation in Passover:
>
>> This year preference will be given to kosher meal participants and non-kosher meal participants who have participated in Jewish, Messianic, Christian or religious programming applicable to the Jewish faith over the past twelve (12) months. Those who do not meet these requirements will be approved or denied at the discretion of the facility Chaplain.
>
> These changes were implemented because [the Department] can no longer afford the expense of individuals participating in Passover who have no desire to participate in any other aspect of the faith. You do not meet the criteria for participation.

ECF No. 16-1 at 8.

In response to the present motion for summary judgment, Mr. Anderson submitted a declaration in which he indicated that he follows the "United Church of God's teachings," and he believes the following with respect to Passover:

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

- "that recognition and celebration of Passover is meant to serve as a reminder that eternal life is only possible through Christ, who in the Bible is identified as the true Passover lamb[,]";
- "that the last supper was a Passover meal, and at that meal, Jesus explains the symbolism of the food and drink at Passover meals"; and
- "that Christ was sacrificed on Passover, and the observance of Passover is meant to remind His people of His sacrifice."

ECF No. 16-1 at 2.

Plaintiff's complaint contends the following violations based on Defendants' denial of the Passover meal service: (1) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and (2) the "establishment-of-religion prohibition" of the Washington State Constitution, Article I, Section 11.

## LEGAL STANDARD

### Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect

the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

**Religious Land Use and Incarcerated Persons Act ("RLUIPA")**

RLUIPA, 42 U.S.C. § 2000cc *et seq.*, provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A plaintiff seeking relief under RLUIPA must show that his religious exercise has been burdened and that the burden is substantial. *Id.* RLUIPA must be "construed broadly in favor of protecting an inmate's right to

exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). The Ninth Circuit has explained that for a burden on religious exercise to be "substantial," it "must be 'oppressive' to a 'significantly great' extent" and must impose a "significantly great restriction or onus" upon the inmate's religious exercise. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (internal quotation omitted). If the plaintiff succeeds in making a prima facie showing of a substantial burden on religious exercise, the burden shifts to the government to demonstrate that the challenged practice both furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b); *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008).

**Washington State Constitution**

The Washington State Constitution's religious freedom clause protects "freedom of conscience in all matters of religious sentiment, belief and worship." Wash. Const. art. I, § 11. However, "the liberty of conscience . . . shall not be so construed as to . . . justify practices inconsistent with the peace and safety of the state." *Id.*

**JURISDICTION**

Defendants removed Plaintiff's suit to this Court on federal question jurisdiction, based on Plaintiff's RLUIPA claim. 28 U.S.C. § 1331; *see* ECF No. 1.

The Court exercises supplemental jurisdiction over Plaintiff's Washington state constitutional claim. 28 U.S.C. § 1367.

## DISCUSSION

Mr. Anderson argues that Defendant has "unnecessarily burdened" Mr. Anderson's exercise of religion by denying his requests to receive Passover meal service in 2017 and 2018. ECF No. 16 at 1. Mr. Anderson further argues that observing Passover is related to his "sincerely held religious beliefs" and that Mr. Anderson's offer to pay for his Passover meals negates additional cost as a justification for denying Mr. Anderson's Passover meal request.

In seeking summary judgment, Defendants contend that Plaintiff's RLUIPA claim fails because Plaintiff does not show, or even allege, that Defendants have placed substantial pressure on him to modify his behavior or violate his beliefs. ECF No. 9 at 5.

Mr. Anderson indicates that he believes in observing Passover as a Christian. He does not declare any belief in the Jewish faith, and he does not explain how his beliefs prohibit him from consuming leavened or fermented grain products during the Passover period. There is no indication or allegation that Defendants inhibited Plaintiff in any way from participating in Passover-related religious services or programming other than not providing him with Passover meals. The Court finds that denial of special Passover meals alone, without any indication that Plaintiff's beliefs compel such a diet, do not substantially burden Plaintiff's exercise of his

religious beliefs. Moreover, even if Plaintiff had shown a substantial burden, Defendants have shown a compelling state interest in reducing the collective cost of providing specialized Passover meal service to inmates who do not receive a kosher diet nor practice the religion with which the meal service is associated.

Defendants refer to the free exercise clause of the First Amendment to the U.S. Constitution in their briefing. *See* ECF No. 17 at 3. However, the Court does not find any mention of a First Amendment-based claim in Plaintiff's complaint. *See* ECF No. 3-1 at 10 (stating causes of action). Moreover, even if the Court were to liberally construe Plaintiff's complaint to state a First Amendment claim, the standards under RLUIPA are more favorable to plaintiffs than those under the First Amendment. *Greene*, 513 F.3d at 986. To state a claim for violation of his First Amendment right to free exercise of religion, Plaintiff would need to show that the Defendants burdened his practice of religion without any justification reasonably related to legitimate penological interests. *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997). Here, because the Court already found that Defendants did not burden Plaintiff's practice of his religion, there also is no burden on Plaintiff's free exercise for purposes of the First Amendment.

Finally, if a court dismisses a plaintiff's federal claims before trial, there is no justification for adjudicating a pendent state law claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore, Plaintiff's supplemental state law claim based on the Washington State Constitution are dismissed without prejudice

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~9

upon dismissal of his RLUIPA claim on the same facts. *See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 9**, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's RLUIPA claim is dismissed with prejudice, and Plaintiff's Washington State constitutional claim is dismissed without prejudice.

2. The Clerk is directed to enter Judgment for Defendants.

3. Any pending motions are **DENIED AS MOOT**, and all upcoming hearings and deadlines are **STRICKEN**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel and to Plaintiff, and **close this case**.

**DATED** August 20, 2018.

                         *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
                         United States District Judge